Your Honor, Your Honors, the case before you is very simple. It's a case that is fact-driven and is driven on the primary issue of the fact that Appellant's spouse submitted an I-130 in September of 2003 to U.S. CIS. And when she did so, she submitted that I-130 and provided to the government the things they needed to have in order to find Appellant and prosecute him for illegal reentry after deportation. Why do I say that? Because she provided his true name, his actual address, his date of birth, and more importantly, she provided an A-number. A-numbers are unique in immigration law. A-numbers identify a person who's had an encounter. What did she omit? Excuse me, Your Honor. What did she omit? What she omitted was his place of employment and how he had entered. Now, those, I concur with the Court, are significant omissions. But, Your Honor, what she provided was enough to let U.S. CIS realize that Mr. Ramirez had, in fact, been removed prior. And they— Except that the standard, at least for the government's knowledge of presence, not the illegality of it, but the fact that your client was present, is they must actually know? He must be found in the United States, and I think the law is well settled on that, Your Honor. I think we have some maybe different language. So, what is your interpretation of the government's—what the government must know about whether the person is here or not? They must—he must be found, and there must be a probability they can determine that he's, in fact, here by what they know. That's the way that I read it. That's the way that I see it. You don't divide the two, that they must actually know of the presence and must have a reasonable basis, or they could have found out that the presence was illegal? There must be a reasonable basis to determine that he might be in the country, especially when you have a foreign national who advises you that he's here, this is his address, hi, this is my A number, and according to your databases, I have been removed. There's just—if you divide it in two prongs, it's hard to say found in means told about. I would agree with that, Your Honor, but I think found in also places some of the burden on the government to do what reasonable law enforcement would do. I read Santana sort of to suggest that's true. If they come through an official checkpoint physically and immigration authorities sort of check them all coming through, they've been found in at that point. But that's different than constructive knowledge attribution as to whether they're illegal or not. So I guess I'm—I think the Seventh Circuit, disagreeing with how it reads Santana, says actual knowledge as to physical discovery, but attribution works for knowledge of illegality. Isn't that how they look at it? Yes, sir. Your Honor, I would say in this case, you can take that filing of that I-130 and make it a comparison to the example you just gave. You have a person who files an application for benefits, for benefits, to try to become a permanent resident, advises you of his actual address, advises you of his A number. And when you run basic checks, you determine that he has, in fact, been removed. Is the district court's contrary finding subject to clear error review? I believe, Your Honor, the standard of review before the court is de novo. As to statute of limitations interpreting them, but as to his factual findings of not aware of illegality and presence, wouldn't that be just factual findings he made having looked at the wife's actions and the paperwork being imperfect? That's correct, Your Honor. But now, going back to what I wanted to address with the court is that here is somebody who's coming forth before the court and advising USCIS of exactly what they need to know in order to act upon his illegality. In the case of United States v. Arthur Guneta, Mr. Guneta actually filed something similar, but he filed a TPS application. And in distinction from my case, he was not forthright and honest. He did not provide his actual A number. He did not advise USCIS that he had, in fact, had an A number before under which he was removed. It wasn't until he continued to have contact with USCIS through the temporary protected status process that it was determined that he was, in fact, here illegally. In my case, my client's family was up front from day one. Now, they found that he had, in fact, been deported, and it was verified back in 2005. When we did the motion to dismiss during the hearing, Agent Gamboa clearly stated, or he stated on the stand, that the checks revealed that he had, in fact, been removed. I asked him, I asked him, well, what if you have this information and you're aware that this person has been removed, wouldn't it behoove you to look a little further? Perhaps he's in the country. That's a strong logistical suggestion. What's your best case that attributes to the government knowledge of illegality and discovery based on a third party, a non-law enforcement third party's statement or action? Well, Your Honor, in this case— I know this case, but what other case at any circuit level would attribute to the government the 352 triggering elements based on a third party's statements or actions, not the defendant's? I'd like to read a portion of the decision of Guernera, if I may, Your Honor. But Guernera was the defendant saying, here I am. Yeah, the defendant—and this is the same case. No, but I'm asking a case—this is the wife saying, he's here. Actually, in this case, it's not the wife saying, she's here, because it was Mr. Ramirez that actually signed the I-130. It was him saying, hi, I'm here. It wasn't the spouse. The I-130, right. It should have been signed by his spouse. That's the correct procedure. But in this case, he actually signed it. He did it. So it's not the wife saying, hi, he's here. It's him saying, hi, I'm here. Well, it's actually his—the form is filled out as if the wife is preparing it, and then actually she is stated as being the person who is submitting the petition, and then he signs it. So I'm not—it's a bit much to say that all that means that at some stage, if that's actually his signature, that he signed it, doesn't mean that he is making those representations, since they're written as if they were by the wife. But nonetheless, that's your position. That is my position, because he actually— So compare that to Guernera. How do you see that as being the equivalent of Guernera? Excuse me, Your Honor. You were going to talk about the Guernera case. Very briefly, points of view to the court that was determined in Guernera, this is a proportional holding. We believe the immigration authorities can reasonably be attributed with actual knowledge that Guernera was present illegally in the United States on September 28, 1999, when Nail's system identified him as having a prior deportation based on a prior conviction for an aggravated felony. That inquiry having been run on the same name, same date of birth, and same country of origin as Guernera submitted in his TPS application. Guernera's TPS application also provided a U.S. address at which Guernera could be physically located. In the incident case, we provided all of that and more. The A number, Your Honor. What Guernera quote you were just giving us is that the government could have attributed to them knowledge of his illegal presence, of his presence illegally. So you're not bifurcating it as some of the case law does of actual knowledge of presence, constructive knowledge of the illegality of the presence. What you just told us from Guernera is on the illegality, is it not?  In this case, as in Guernera, you have enough to make a determination that he could be in the country. Now, it's the failure of the immigration authorities to act upon that information. The file was referred to Federal Law Enforcement Service Center where it remained for eight years. That's where it was. An adjudicator took it upon himself to send it to the Federal Law Enforcement Center for follow-up. No follow-up was done. Now, clearly, the government had enough information to make a determination that Mr. Ramirez was in the country illegally. As a matter of fact, when he was arrested, eventually arrested, he was found one block away from where he had disclosed his address in his I-130. And I-130, mind you, that he erroneously signed. Yes, Your Honor. Judge Rothwick, referrals to law enforcement are common through adjudications. They're common. Adjudications is one part of the immigration service. They're the ones that determine whether or not you get your petition approved, whether or not you get the benefits sought. When Angel Gamboa testified, he very clearly said, referrals from adjudications are common. They're common when we know or there's a possibility somebody's in the country illegally. Typically, how do we come into contact with those people from adjudications? When they come here and they seek a benefit. This is exactly what my client was doing, seeking a benefit. Mind you, he did it the wrong way. He signed his own form, which he shouldn't have signed. But he still sought a benefit, and he provided sufficient information for the government to be aware that he was in the country illegally. Yes. Oh, I can come up with a question. I mean, generally, it's usually... I apologize. No, no, no, no, no. I'm just teasing with you. Usually, I'm just thinking about what you said. I would have thought it's usually the 3582s triggered when you arrest them or at the checkpoint. You're saying it's as common when they're applying for benefits. Then that gets into the vast machinery of the government, civil, are they communicating with criminal. So here's the question. This may be just absolutely settled in the law. Is the government, is attribution of knowledge unquestionable when it comes to the larger world of ICE? A civil benefits immigration authority, what he or she knows about presence is automatically attributed to the people who would know illegality of alien status, which is a really difficult thing to settle. My position is that... Yes. My position would be that... Government's got to know. But what's the best case on that? Because it seems somewhat unrealistic, but it may be very settled. Well, the best case scenario is what happened in this case. I know that what happened, but I'm just wondering the best case because, you know, in the world of Brady and other world you know well. Certainly, even state law enforcement, what they know is attributed to anybody else. Is that true in this immigration context where you have vast centers processing aliens for benefits? Are we going to say, you know, the criminal enforcement therefore is the clock starts ticking? Yes. Yes, because, for instance, the I-130 where this petition went. This I-130 petition went to a massive service center called the Texas Service Center. The Texas Service Center is a depository for applications and applications are adjudicated. But it also has a portion of it is dedicated as an intelligence factor or an intelligence faction which determines whether or not certain cases should be referred for prosecution. That was actually something else that was discussed in the Guinera case, Your Honor. And in the Guinera case, this is paragraph 19 of the opinion. In finding that the center should not be held to the Santana-Castellano standard, the district court relied on testimony that the Texas Service Center was a processing unit without investigatory functions. And that it was overwhelmed by the volume of applications. The district court implicitly concludes that the knowledge of the INS Texas Service Center is not knowledge of the immigration authorities for purposes of statutes of limitations. We cannot agree. In 1999, the INS constituted the immigration authorities with that agency holding responsible for both processing and investigative functions. Further, the government admitted there was, in fact, an intelligence unit stationed at the Texas Service Center to which adjudicators could refer cases for criminal prosecution. And one, yeah, no, that is very helpful. One way of looking at that would be that goes directly to prong two. The government can't say it didn't, but as to actual finding discovery, it's a continuing offense. You got to have the person's body because communications could be untrue. You get a letter that says he's here, but it's not. That's entirely possible. I agree, Your Honor. And then in that case, you'd agree the clock wouldn't have started. If you made some efforts in trying to determine whether or not the person was actually there, there were no efforts made in this case. Even though you had an address, you had a deportable alien, and you had confirmation. So what's your some efforts, the best efforts stand? The best efforts is what the adjudicator of USCIS did. He sent it to federal law enforcement. He sent it here, federal law enforcement center. You deal with it. You enforce the law. And they did it. What do you say about the Seventh Circuit's law? It's just wrong? I believe it's wrong, Your Honor. I believe it. Is there a split, a clear split? I wouldn't go that far, but, yes, that would be my position. That would be my position. But, again, the bottom line is you had all the tools you needed before you to make a determination that Mr. Ramirez was, in fact, in the United States illegally. You had it all. It was right in front of you. And you chose to do nothing. The only thing you did was send it out, refer it out, confirm that he was removed, confirm that in 2005, and for whatever reason, the system stopped working. No one followed up. Now, they followed up, yeah, years later, and they found him a block away from where he was originally living. According to the I-130, he had disclosed to the government. All right, counsel. We have your argument. Good morning. May it please the court, counsel. Well, I'd like to begin by fundamentally disagreeing with the nature of this I-130. As the court is well aware, this is a petition for benefit. It is made by someone with status on behalf of someone who is presumably related to them, and they're seeking to have their status adjusted by the filing of an I-140. An alien cannot file an I-130 on his own behalf. So the fact that his name is on that form is a nullity. It has no effect. It actually is an error. The only person who could actually file that form would have been, he's the beneficiary, would have been the petitioner, his spouse or someone with status in the United States that could provide him with the vehicle for him to alter his status by filing what's called an I-140. Are you aware of a case that says that the government will have attributed to it knowledge of presence and illegality based on a third party's statement or action?  Well, I'm not an expert on this matter, although I think the Compianturas on page 208 specifically sort of talks about this idea of what you can impute from the civil side, which was one of your questions, over to the criminal side. And in this case, what you have is a form that is inherently contradictory. The critical question, block 14, that was left blank was whether your relative is currently residing in the United States. So you have all this other information, and the agent specifically testified that it's not uncommon when someone has been deported. By the way, that's the only thing the government knows about the defendant at this point is that he's been deported, is that they used the address where they lived for years. The family uses the address. What you're asking us to do is just affirm no clear error that this wasn't sufficient to put the government on notice? Or is there uncertainty either in our law or among the circuits, and you're asking for more? I think that this case is resolved on the clear error standard of review. I think that the district court's findings of fact are unassailable on this record. So that would be the request. But clearly, our law has got some uncertainties that allow you to – the Seventh Circuit thinks that we have a different standard. Constructive knowledge is to prong one. What's your thought on that? I think that if you go back to Santillana, I believe, has this sort of – and the district court alluded to it in its order, this good-faith sort of little caveat there where it talks about someone presenting themselves and they let them in and they proceed on their way. That in that case, we would attribute knowledge. But I don't think that there was ever any doubt that, unlike Gunnera, where the defendant himself seeks and communicates with the government seeking to get temporary protected status, when you have a third party or a situation such as this, I really don't see the Fifth Circuit as the law being ambiguous at all, actually. I think that it's quite clear that under the two prongs that we have no evidence in this record of presence in the United States. But given the various purpose of this authoritative form, the omission in the document, the failure to fill out that portion of the document which asks whether he's presently in the United States would leave one on its face to conclude that this is a straightforward petition by an American citizen to bring in a relative pursuant to that authority. In my view, and to write this down. As I read this thing, it doesn't really say anything about his presence here. That was expressly omitted. So if that's the case, I don't know why this implicates any of these concerns about constructive knowledge or whatever else. If that is sufficient, then I don't know where we are. In every one of these authoritative forms, are you going to assume that the person is in the United States? No, the form contemplates the opposite. In my view. Are you missing something about that form? This form, and there are statistics out there, I think the government receives hundreds of thousands of I-130s every year. They are processed administratively, not with the law enforcement bent. In fact, they're really there to provide a benefit. It is a benefits organization. If, in fact, there is information that shows that someone is here, someone is working, someone has a prior deportation, a referral can be made. Under these circumstances, there's nothing to indicate that the alien is here. It raises inference and speculation. In ordinary practice, would the larger percentage of these cases be situations in which the individual has not yet come into the United States or not? Absolutely. Do you have any sense of what that is? In our record, the agent testifies that in the majority of cases, the alien, the beneficiary, is not in the United States and that the family member is seeking to bring them in. Basically, it allows them to come back in with an I-140 and adjust their status, which would give them the opportunity to get a green card and enter the United States and then start formal proceedings to become a citizen. Where would we be under our case law, Fifth Circuit case law, Gennaro in particular, if, in fact, this form had been filled out and it said that the relative under paragraph 14 is currently in the United States and can't read the small print right now, whatever else it says at that point? Is that sufficient to give actual knowledge? I would be reluctant to say that that alone. What I'm trying to get a handle on is what is the nature of the knowledge the government is supposed to have. It's one thing to have it on assertion on a form. Gennaro, we had the physical person walking through immigration sites. Going back to the language of compiantores, when his physical presence is discovered and noted by the immigration authorities. Then, of course, the second prong, which is reasonable in nature, knowledge of the illegality of the alien's presence must be reasonably attributable to. At some point, I think that you would have a factual predicate that would be enough to satisfy and impute knowledge. Like in Gennaro, where the individual is directly communicating with the government, the government's corresponding back. I think that that is an entirely different situation than what we have here. I do believe that where the form is not originated by the defendant himself or the alien himself, I think that it raises serious questions about what you can impute and infer the government might know from the filing of a form. What if the family member is completely wrong? It just strikes me that at some point, in a case we don't have here. In fact, the cases before us, not the hypothetical cases in the law. The facts that are before us is that this form contemplated that you would say whether they're in the States or they're not. They omitted that information. I have a hard time getting to the question of constructive knowledge of that. If that's true, then with any of these I-34, although the majority of them were filed by people out of the country, with the alien out of the country, that the United States has got some kind of duty to prosecute that. I don't see, in this case, these issues. And I think that on top of that, Your Honor, the gloss here is the district court's factual findings are not clearly erroneous on this record. We don't go into the details of the district court findings. We sometimes look at those. So I think that the more difficult legal question might be presented in a future case. It is certainly not presented here because the factual requirements necessary. I agree with Counsel Oppsitt talking about the current law. There's a lot in there we can run with, and he does it very ably. Unfortunately, that's an argument in which you don't have a platform to make. To me, it is one person. All right, Counsel. Anything further? No further questions. I'll yield back my time. Thank you. Thank you. Well, I disagree. Well, of course. I disagree. You would be disappointed otherwise. Well, Your Honor, I think that the totality of the circumstances here should take you to look or come to a different conclusion. And I say that based on the question that I asked Agent Gamboa at the motion. Let me be clear. I said what I said because I want to give you a fair opportunity to persuade me. And I'm trying to get there. All right, I'll let you know. This is something that I asked him. Okay. Now, based on all the information I have shown you this morning, the I-130 filing, the IBIS inquiry, the result of the IBIS inquiry, the DAX printout, as a federal agent who has been involved in immigration for over 70 years, could you reasonably conclude that this person had been deported before? His response, yes. And I asked him a follow-up question. And could you also conclude that perhaps this person might be in the United States? His answer, could I conclude that? Question, yes. I don't know. I don't think I would have any – I mean, there's no way of telling. I mean, he could be. And that's the point. The point is that you have enough to make that determination that he could be. Now, in terms of – Isn't he saying there's enough to make some further inquiry? Correct. As opposed to actually making that finding at that time. To make an assumption that he's not here because I want 30 filings, and I don't know the actual stats, Your Honor, but in years past, the amount of filings that are done in the United States are sometimes as many petitions as those that are done for people outside of the country. Because if you look at the I-130 form, the I-130 form specifically asks whether or not you can petition for that relative and conclude your immigration process in the United States. That's the adjustment of status process that Mr. Gay was referring to. And that is – that's a run-of-the-mill application process that's done every day in this country. And that's typically done by people who enter the country lawfully or have changed status. So it's not that the majority of the I-130s come from overseas or come from people who are living abroad. Some do. But I would not go as far as to say the majority of them do. I don't think that's a proper conclusion. And I don't have the stat, and I can't tell you, but I practiced immigration law for the last 25 years of my life, and I will tell you that I would say it's 50-50. So in this case, you have enough information to make a determination as to whether or not this person is in the country legally or whether or not you should figure that out, which is what Agent Gamboa is saying. You have everything before you. The failure to act is not on my client. It's on the government. And now, years later, they want to come back, they want to prosecute them, which they did. Chargeable with knowledge, under your view, and what then should they do with that knowledge? What should they do with that knowledge? Refer it to law enforcement. Do what they did in this case. Send it to the federal law enforcement. But if at least in half of the cases they're not here, what they're supposed to do is to go search him down, initiate proceedings of deportation and so forth? Well, the initiated proceedings, you first have to find the person to be able to serve on the list to appear. That's a little harder. But I think when you have an aggravated felon, a person like my client, because my client is not at the bottom of the heap in terms of priorities, Your Honor. He's at the top of the heap. He's a criminal alien who's committed a serious crime. He delivered cocaine. This is not a guy who came into this country, happened to get deported, and now he finds himself back asking, hi, I'd like to get a permanent residency. No, sir. He's a knife felon. A knife felon. Somebody who the government should give the most priority to. Aside from national security cases, this is the kind of guy that your alarm bell should be going off saying, where is this guy? This guy could be here. Why? Because he's committed a serious offense. That's appealing, but that's creating a sort of, depends on the defendant's category and severity, the rule shifts for 3582 purposes. I think maybe the curiosity of law enforcement should shift, and the priority should be there. But even we struggle with deciding who's an ag felon. I know that, Your Honor, with all due respect to all three of you. I struggle with it. Every court struggles with it. So, again. It's a strong argument. It's a matter of social policy that the immigration people ought to catch all these bad people that come in here. I think we get a consensus on that. But the question is, in trying to administer the law as it really is, unless you're going to do away with this benefit that's conferred on the people to allow a resident, an alien, to benefit from having a relationship with a citizen, I think you're going to have difficulty with what you do with that. If the guy is, he sort of begs the question, if they know that this is the guy and he's in the country, they ought to go get him. But if, in fact, there's nothing there that says that he's here, then I have a hard time triggering that, cutting off the government from actually the later prosecution. If you're going to impose a duty upon the government to enforce a policy, a strong policy, it has to be realistic. And that is, that is a duty that can be discharged. And I don't know, that's the underlying question. How do they, how in the real world can they discharge that? May I respond? Yes. I know my time is up, but I'll respond. No, no, I took up two minutes of your time there, so go ahead. I think we have an obligation, Your Honor, to respond when the facts before them, specifically an alien who says, this is my address, this is what I've done, and here's my criminal history, and here's my true date of birth, provides that information. I think we have a duty to do that. That's my response. Thank you all. Thank you both.